LINDA A. EASTLACK, ADMINISTRATRIX AD PROSEQUEN-DUM OF THE ESTATE OF J. WILBERT EASTLACK, DE-CEASED, PLAINTIFF-RESPONDENT, v. JOHN W. MIT-TEN, DEFENDANT-APPELLANT.

Submitted May 17, 1932—Decided October 17, 1932.

For the plaintiff-respondent, *Albert S. Woodruff*.

For the defendant-appellant, *Walter S. Keown*.

The opinion of the court was delivered by

Brogan, J.  This is an appeal by the defendant from a judgment in the Supreme Court Circuit of Gloucester county in a death action in the sum of $10,000.  The deceased drove an automobile truck loaded with farm produce on to a ferry-boat that ran between Camden, New Jersey, and Philadelphia, Pennsylvania, on the night of October 23d, 1930.  His was the last vehicle on the rear of the boat on the left side of the driveway.  As is the custom, chocks were placed in back of the rear wheels to prevent the auto truck from rolling. The defendant's auto truck was directly in front of that of the deceased, a Ford truck with a low body extending back from its rear wheels.

When the ferryboat docked at Philadelphia, the deceased was found to have been injured in some manner.  He was taken at once to the hospital where, two days later, he died. He was forty years old, had enjoyed good health and left surviving him a wife and two children.  The medical testimony disclosed that the deceased had been severely injured

externally and internally. At the time he entered the hospital he had bruises on both his chest and back as well as severe abdominal pain. The medical testimony disclosed that he died of a ruptured organ in the abdominal region; that the deceased received these injuries by the application of external force from the back and front, the more severe pressure being from the back. A post-mortem examination disclosed bruises in the external lining of the heart through the diaphragm and large lacerations of the liver, which testimony was corroborated. There is, however, no substantial dispute regarding the injuries suffered by the deceased, but they become of importance because of the fact that no one saw the accident which caused the death.

Several disinterested witnesses testified that most of the passengers and vehicles had disembarked when the injured man was discovered. The first intimation they had of an accident was when they heard the deceased scream and, upon investigation, found him apparently in pain, holding his stomach. He was standing in front of his own car and, as the testimony shows, leaning against his radiator, whence he staggered around to the running board of his car, holding his stomach and his back. The auto truck of the decedent had not moved. There was no jar from the boat; there were chocks under the wheels; the gears disengaged; the engine not started; the emergency brake on. These conditions obtaining, it was a physical impossibilty for the truck of the decedent to have come forward and caused the accident.

The defendant's driver admitted that the back of his truck would be in line with the back of the decedent were he bending over to crank his car and it was in front of his own car and in back of defendant's car that decedent was discovered.

The appellant argues for reversal on three grounds. First, the trial court should have granted the motion for nonsuit at the close of the plaintiff's case. Second, that a direction of the verdict should have been granted at the conclusion of the whole case. Third, that the trial court erred in charging the jury.

While it is true that there was no eye-witness to the accident, yet we think that the facts and circumstances surrounding the case were sufficiently proven to justify the trial court in denying a motion for nonsuit and likewise in denying a motion for a directed verdict in favor of the defendant.

On motion for a nonsuit all of the facts proven in the plaintiff's case are, for the purpose of the argument, taken as admitted and every inference of fact which legitimately can be drawn therefrom. *Jones* v. *Public Service Railway,* 86 *N. J. L.* 648.

The deceased received his injuries from being crushed between two heavy objects. The force to which he was subjected must, by necessary inference, have come from one or the other of these automobiles. It could not have come from some extraneous source because the decedent was discovered in the briefest interval of time after the application of these external forces. He screamed and the witnesses immediately went to him. He was hurt either by his own car or the car in front of him. He was discovered between the two cars, the rear of the defendant's and the front of his own. Now his own car, as has been demonstrated, had not moved on its own power. It is a most reasonable and almost necessary inference, from the testimony, to conclude that it did not move under any outside power because the ferryboat did not go into the slip with a jar and if his car moved at all of its own momentum it would have rolled backwards, which, of course, could do no injury to the decedent in the position in which he was. But chocks were behind the wheels to prevent such backward motion and while it is possible that he might have been injured in the front part of his body by cranking the car, as has been suggested by defendant's counsel, certainly the crank of an automobile could not have inflicted injuries to his back. This suggestion is totally disposed of by the medical testimony, which has not been contradicted, that the decedent died from pressure exerted upon him more from the back than from the front.

At the time the decedent was discovered the defendant's truck was moving and had stopped again after going some distance preparatory to leaving the ferryboat.

One witness, an employe on the ferryboat, testified that the defendant's truck "fired off" and that is the time "he hollered" (meaning the deceased) and, further, that the defendant's truck was moving and that the truck of the deceased had not moved. This testimony of course was a fact issue for the jury to determine as indeed it did determine that the truck of the deceased had not started while the truck of the defendant had started.

The defendant also complains against the charge of the court. The court charged, he says, as follows: "That the plaintiff's claim in this case was that the injury to Mr. Eastlack, the decedent, which afterwards resulted in his death, was caused by the truck of the defendant, John W. Mitten, being backed into him so that he was injured in the back and other places as testified to here in court."

As I read the court's charge to the jury, it was: "The plaintiff in this case claims that on October 23d, 1930, J. Wilbert Eastlack, the husband of the plaintiff, was on the ferryboat Ocean City, crossing from Camden to Philadelphia, on what is known as the Reading ferry, in a truck which was driven on the boat and located on the rear of the ferryboat on the left-hand side; that directly in front of this truck driven by Mr. Eastlack, &c." In other words, the court, in charging the jury, outlined what the plaintiff's contention was. This was not error and a reading of the court's entire charge demonstrates how plainly the court impressed the jury that it was the jury's province alone to determine from the testimony what the true facts in the case were. The court had a right to comment on the testimony if in his judgment it was proper so to do, so long as he leaves to the jury to determine the facts and draw their own conclusions therefrom. *Kneip* v. *New York and Long Branch Railroad,* 102 *N. J. L.* 374.

The defendant in this appeal says that there should have been a nonsuit or a direction of the verdict from the court below because, generally speaking, there was no proof of negligence on the part of the defendant, citing *McCombe* v. *Public Service Railway,* 95 *N. J. L.* 187, and other cases in

support of his position. The defendant argues that in order to sustain the verdict, negligence would have to be inferred and points out, quite properly, that negligence must always be proved.

Now it is plain from the testimony in this case that there was evidence of negligence. The law puts upon everyone the burden of conducting himself as a reasonably prudent man should under all the circumstances surrounding a situation.

The defendant's driver testified that he drove on the ferryboat, stopped his car, put on his emergency brake, then proceeded to set about the task of writing out his receipts for the day's work. He must have been greatly engrossed in this work because from his own lips comes the testimony that he didn't know whether the boat had docked or not and the only way he knew it was by the motors of other trucks starting up. He continues with the recital that when he heard the other motors all starting up he started his motor and when the truck ahead of him started to move he released his emergency brake and started to move, too. On being asked if his car went backwards at any time prior to starting up, his answer was "not that he noticed." This witness testified that he knew nothing about the injuries of the decedent until he heard him scream. Thereupon he stopped his truck and went back to the injured man. Subsequently he drove his own truck off the boat and went back and drove the truck of the decedent off the boat and, further, that when he got into the truck of the decedent to drive it off the boat the emergency brake was on. This witness further testifies that when he cranked the decedent's car it was not in gear and further admits that he didn't know there was another machine, that of the deceased, a few feet behind him up to the time of the accident; that he hadn't looked back and, further, that he didn't notice his truck moving; that he hadn't noticed any unusual jolt or jar on the boat; that when he first saw the decedent he was leaning against the radiator of his own truck in a practically standing position and that the end of his truck, if projected back and Eastlack was standing between the cars, would come somewhere around

the small of the decedent's back. Under these circumstances, manifestly it was a question of fact for the jury as to whether or not the defendant, through his agent, was guilty of negligence. The plaintiff of course was bound to show something more than that the defendant was possibly responsible for the death of the decedent. The plaintiff had to show and did show not only the evidence of possible responsibility but the evidence of such circumstances as would justify the inference that the death was caused by the wrongful act of the defendant, and would exclude the idea that it was due to a cause with which the defendant was unconnected. *Bond* v. *Smith,* 113 *N. Y.* 378; *Houston* v. *Traphagen,* 47 *N. J. L.* 23; *Suburban Electric Co.* v. *Nugent,* 58 *Id.* 658.

The case of *McCombe* v. *Public Service Railway, supra,* is not in point as there it was proven only that the defendant might possibly have been the cause of the death. No negligence was shown nor could it be shown under the facts presented in that case but in this case there were two possibilities as to the happening. First, that the defendant's truck backed up and caused the injury. Secondly, that the decedent's truck ran ahead forcing him against the truck in front and causing the injury. The latter alternative was completely negative under all the testimony in the case.

The judgment under appeal is affirmed.

*For affirmance*—THE CHANCELLOR, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, VAN BUSKIRK, KAYS, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.