Rockingham, }
Dec. 1, 1936. }

Margaret F. Ahern, *Adm'x*

*v.*

Eldredge Brewing Company, Inc.

*Hughes & Burns (Mr. Burns* orally), for the plaintiff.

*Arthur E. Sewall* and *Thomas L. Cleaton (Mr. Sewall* orally), for the defendant.

BRANCH, J.   By its motion to dismiss the petition at the close of the evidence and its subsequent motion to set aside the "verdict," the defendant clearly raised the question of the sufficiency of the evidence to support the essential finding of fact made by the trial court, which reads as follows: "I find that death was due to coronary thrombosis aggravated by excitement and strain occasioned by Mr. Ahern going into the tun much earlier than was the practice and without dissipating the gas as instructed and so encountering a greater density of the pungent and suffocating gas than usual and that said death was accidental and arose out of and in the course of the deceased's employment."   It is plain enough that Mr. Ahern's death was "accidental" as that term is defined in *Guay* v. *Company,* 83 N. H. 392, and also that it occurred in the course of his employment. The vital issue in this case is whether it "arose out of" his employment.

The court in the above quoted finding rejected the medical testimony of the plaintiff to the effect that Mr. Ahern's death was caused by asphyxiation by carbon dioxide gas, and adopted the conclusion of the medical referee that it resulted from coronary thrombosis. This term denotes the plugging of the coronary artery by a blood clot which, in itself, is a sufficient and common cause of death.   The court's finding postulates a preëxisting condition of this kind, although the plaintiff's evidence tended strongly to disprove it, which was aggravated by excitement and strain.   The conclusion that a master should be charged with liability to pay compensation upon the ground that the conduct of his servant aggravated an existing pathological condition which was, in itself, an adequate cause for the servant's subsequent death, is one which does not readily command acceptance.

The plaintiff does not attempt to defend the finding of the court upon the theory of aggravation, but rather upon the theory of causation.   It is argued that "the evidence is conclusive that the coronary thrombosis from which it is claimed the deceased did die, was accidental in that it resulted from a strain on the part of the

deceased in attempting to escape or extricate himself from the presence and effect of carbon dioxide gas." The theory upon which this argument rests was set forth in the questions propounded by plaintiff's counsel to the medical experts, of which the following are typical:

From the testimony of Dr. Luce: "Q. Now assume, Doctor, that Mr. Ahern had coronary trouble or heart trouble and he didn't know it and never showed any symptoms of it and went into this tun under the conditions as I have described to you and was overcome or affected by this gas and attempted to go out of that tun by means of the ladder and this ladder slipped out of place, what effect would that have and whether or not that would produce a strain which would cause coronary thrombosis and death? A. It would."

From the testimony of Dr. Gray: "Q. Assume Mr. Ahern was suffering from coronary thrombosis or heart trouble and he went down into the tun and came in contact with the gas and in his struggle to get out he attempted to climb that ladder and the ladder slipped away from the wall as it did with Mr. Primmerman and precipitated him down into the tank again, would that have produced a strain on his heart which would cause coronary thrombosis? A. It might cause it. Q. And it probably would? A. Not necessarily. Q. Well it could? A. It could, yes."

More fully stated, the plaintiff's argument is that Mr. Ahern reached the bottom of the vat in safety; that he then stooped over to unscrew the brass plug and thus brought his face in contact with the carbon dioxide gas which was collected in the lower part of the tun; that upon discovering the presence of the gas, he became excited and hurriedly attempted to get out of the tun by climbing the ladder; that in so doing, he pulled the ladder away from the wall and was precipitated to the bottom of the vat again, and finally that the resulting strain produced the thrombosis from which he died.

The trouble with this argument is that the case is bare of evidence of what Mr. Ahern's movements were after he started to enter the tank. The theory of the defendant that he died on his way down the ladder as a result of the thrombosis finds quite as much support in the evidence as the plaintiff's theory that he fell while on his way up the ladder and suffered a strain which caused the thrombosis. The absence of all physical evidence of a struggle and the composed manner in which his body lay on the floor of the tank, lends color to the defendant's theory. The plaintiff's argument is obviously suggested by the testimony of Mr. Primmerman, and is in substance that the

deceased may be found to have reacted in precisely the way that Primmerman did, to the presence of gas in the tun. This is pure speculation if for no other reason than that it assumes as a fact that the deceased reached the floor of the tun in safety, a point upon which the evidence is silent. Under these circumstances the conclusion of the trial court that "said death ... arose out of ... the deceased's employment" cannot be sustained.

This case is governed by the rule that a trier of fact cannot be permitted to determine by guess or conjecture between two equally probable causes of an injury, for only one of which the defendant is responsible. *Deschenes* v. *Railroad*, 69 N. H. 285. The issue here differs materially from that in *Boucher* v. *Larochelle*, 74 N. H. 433, where death resulted from chloroform and there was evidence of the defendant's negligence in the method of administration. It was there held that the question of causal negligence was properly submitted to the jury, although there was evidence that "the mere administration of chloroform to persons in a certain rare and obscure pathologic condition is sufficient to cause death." We do not question the soundness of the conclusion reached in that case to the effect that "where the injury is a natural and probable result of the negligence charged, a wrongdoer 'cannot set up as an answer to the action the bare possibility of a loss if his wrongful act had never been done.'" *Ib.* 435; *Bresnahan* v. *Company, ante,* 273. We think, however, that the present case is governed by the more general rule, to which reference is also made in the same opinion, that where the evidence discloses no connection between the injury and the alleged cause except a bare possibility that the former resulted from the latter, there is nothing for the jury where it is also possible that the injury may be due to other causes. *Deschenes* v. *Railroad, supra; Dame* v. *Company,* 71 N. H. 407; *Reynolds* v. *Company,* 73 N. H. 126; *Clark* v. *Sharpe,* 76 N. H. 446, 447; *Nadeau* v. *Stevens,* 79 N. H. 502; *Russell* v. *Railroad,* 83 N. H. 246, 249. Some evidence tending to establish not only the possibility but also the probability that excitement and strain resulting from an encounter with suffocating gas aggravated a preëxisting physical condition and thereby caused Mr. Ahern's death, was, under the theory of the trial court, a necessary element of the plaintiff's case, and in the absence of such evidence, the finding in his favor cannot be sustained.

*Petition dismissed.*

PAGE, J., was absent: the others concurred.